**In the District Court of the United States**
**For The District of South Carolina**
BEAUFORT DIVISION

| | |
|---|---|
| Kevin Walton, #275713, ) | |
| ) | Civil Action No. 9:04-2201-HFF-GCK |
| Petitioner, ) | |
| ) | |
| vs. ) | |
| ) | **REPORT AND RECOMMENDATION** |
| J. C. Gregg, Jr., ) | **OF THE MAGISTRATE JUDGE** |
| ) | |
| Respondent. ) | |

## I. INTRODUCTION

The Petitioner, Kevin Walton (the "Petitioner"), is a pre-trial detainee presently housed in the Florence County Detention Center. Proceeding *pro se*, he has filed a petition (the "Petition") seeking *habeas corpus* relief under Title 28, United States Code, Section 2241.[1] By definition, the relief which he seeks must be based upon a finding that he is being illegally detained in violation of the Constitution or laws or treaties of the United States. 28 U.S.C. § 2241(c)(3). Pursuant to the provisions of Title 28, United States Code, Sections 636(b)(1)(B) and (C) and Local Rule 73.02(B)(2)(c), D.S.C., this Magistrate Judge is authorized to review prisoner petitioners challenging conditions of confinement and submit findings and recommendations to the District Court.

---

[1] Petitioner stated in his Petition for a Writ of Habeas Corpus that he sought relief pursuant to 28 U.S.C. § 2254. [1-1] This statute, however, is not applicable, as Section 2254 pertains to persons "in custody pursuant to the judgment of a State court". As a pre-trial detainee, Petitioner obviously is not in custody pursuant to a judgment of a state court. As a pre-trial petition for a writ of habeas corpus is properly brought under 28 U.S.C. § 2241, the court will consider Petitioner's Petition as one seeking relief pursuant to Section 2241.

Page 1 of 15

## II. THE *PRO SE* PETITION

The Petitioner filed his Petition for a Writ of Habeas Corpus (the "Petition") on June 28, 2004.[2] He is a *pro se* litigant, and thus his pleadings are accorded liberal construction. Hughes v. Rowe, 449 U.S. 5, 9 (1980); Estelle v. Gamble, 429 U.S. 97 (1976); Haines v. Kerner, 404 U.S. 519 (1972); Loe v. Armistead, 582 F.2d 1291 (4th Cir. 1978); Gordon v. Leeke, 574 F.2d 1147 (4th Cir. 1978). *Pro se* pleadings are held to a less stringent standard than those drafted by attorneys. Hughes v. Rowe, 449 U.S. 5 (1980) (*per curiam*). Even under this less stringent standard, however, the *pro se* Petition is still subject to summary dismissal. The mandated liberal construction means only that if the court can reasonably read the pleadings to state a valid claim on which the plaintiff could prevail, it should do so. Barnett v. Hargett, 174 F.3d 1128 (10th Cir. 1999). A court may not construct the plaintiff's legal arguments for him (Small v. Endicott, 998 F.2d 411 (7th Cir. 1993)), nor should a court "conjure up questions never squarely presented." Beaudett v. City of Hampton, 775 F.2d 1274, 1278 (4th Cir. 1985), *cert. denied*, 475 U.S. 1088 (1986).

## III. BACKGROUND INFORMATION

On or about March 28, 2003, the Florence County Sheriff's Office ("FCSO") began an homicide investigation that culminated with the issuance of arrest warrants (the "Warrants") for the Petitioner for murder (Warrant # H 275696) and grand larceny (Warrant # 27595). These Warrants were entered into the National Crime Information Center ("NCIC") database on or about March 29, 2003.

---

[2] In the event a limitations issue arises, the Petitioner will have the benefit of the holding in Houston v. Lack, 487 U.S. 266 (1988) with respect to the "delivery" date of his Petition. See Order [2-1] filed April 24, 2003, p.1 at n.2.

On or about April 22, 2003, Petitioner was arrested by the Chesterfield County Police Department in Chesterfield County, Virginia, pursuant to the Warrants. Thereafter, the State of South Carolina initiated proceedings to extradite Petitioner to South Carolina. During the time that Petitioner was held in Chesterfield County, Petitioner learned of the existence of a Missouri warrant that charged him with a parole violation, and on May 6, 2003, the arrest warrant of extradition for the Missouri Department of Corrections was dismissed against him.[3]

Petitioner, assisted by counsel, appeared for several extradition hearings in Virginia, which ultimately resulted in the issuance of an order on June 25, 2003 for his extradition to Florence County, where he arrived on August 7, 2003.[4] Petitioner has been held as a pre-trial detainee at the Florence County Detention Center since that date. Petitioner contends that on August 20, 2003, his court-appointed attorney filed discovery, and on October 13, 2003, Petitioner and his attorney appeared at a preliminary hearing, where the cases were bonded over to the Court of General Sessions. Petitioner alleges that no indictment has been issued since his return to South Carolina on August 7, 2003.[5] Furthermore, Petitioner contends that the Florence County Solicitor should have requested extradition under Article IV of the Interstate Agreement on Detainers Act, which entitled him to a trial within one hundred and twenty (120) days after his arrival in South Carolina.[6] See Interstate Agreement on Detainers Act, 18 U.S.C. app. § 2 (2000) (hereinafter the "IADA").

---

[3] See Petition at p. 2, attached to Petitioner's Answers to Special Interrogatories. [4-1]

[4] See Petition at p. 3, attached to Petitioner's Answers to Special Interrogatories. [4-1]

[5] The Respondent stated that Petitioner has been indicted by a Florence County Grand Jury for the crimes for which he had been arrested, Petitioner has been appointed legal counsel, and he is awaiting trial on these charges. See Respondent's Memorandum of Law [19-1] at p. 2.

[6] See Petition at p. 6, attached to Petitioner's Answers to Special Interrogatories. [4-1]

## IV. PROCEDURAL HISTORY

The present federal habeas Petition was filed on June 28, 2004 against J.C. Gregg, Jr., Sheriff of Florence County (the "Respondent").[7] [1-1] Although Petitioner filed this Petition pursuant to Section 2254, the court will consider the Petition as one filed pursuant to Section 2241 because Petitioner is a pretrial detainee.

The undersigned issued Special Interrogatories to the Petitioner in order to determine whether Petitioner had exhausted his state remedies with respect to the extradition process used in his case. [2-1] Petitioner responded that he was aware of his obligation to pursue state remedies, "and has tried to no avail." [4-1; 5-1] Thereafter, on August 12, 2004, an Order was issued which directed the Clerk of Court to serve the Petition on the Respondent. [6-1] According to the records maintained by the Clerk of Court, the Respondent was served with the summons and complaint on August 17, 2004 by certified mail, and this court's order informed the Respondent that a response was to be filed no later than fifty (50) days after the date that the Order was filed. [6-1]



On October 1, 2004, Petitioner moved for appointment of counsel, or in the alternative, to be allowed adequate time to use a law library. [7-1; 7-2] These motions were denied by an Order issued by the undersigned. [9-1] On October 8, 2004, approximately eight (8) days after the response was due, the Petitioner requested that the court enter a judgment of default against the Respondent as he had failed to respond to the Petition. [8-1] Thereafter, on December 21, 2004, the undersigned ordered that the Respondent file his response to the Petition within ten (10) days, or Respondent would have to show cause as to the reason default judgment should not be entered

---

[7]    Petitioner has informed the court that J.C. Gregg, Jr. has been replaced by Kenny Boone. [14-1]

against him. [10-1] Petitioner filed an "Objection" to the court's order, arguing that the Respondent should not have been granted extra time to respond, given the fact that Respondent had not requested an extension of time in advance of the deadline, and protested the court's action, stating: "In closing, the Petitioner feels the Respondent should not be allowed a second bite of the apple."[8]

On December 30, 2004, the Respondent filed his response to Petitioner's Petition, alleging, in part, that while Petitioner was in Virginia, he and his court appointed counsel had fought extradition to South Carolina, and the lapse of time between April 23, 2003, when he was taken into custody in Chesterfield County, and August 7, 2003, when Petitioner arrived in Florence County, was caused by Petitioner's efforts to challenge the extradition to South Carolina.[9] The Response also alleged that (1) Petitioner in fact had been indicted by a Florence County Grand Jury on September 9, 2004; and (2) Petitioner had failed to exhaust state remedies as his attorney had not filed a motion for a speedy trial.[10] Petitioner filed a Reply on January 6, 2005, contending that the Respondent did not address the reason he should not be held in default for not filing his response within the initial fifty (50) day period. [13-1]



Petitioner learned that he might go to trial in Florence County at the end of February 2005. On February 18, 2005, Petitioner filed a request with this court that it issue a "Stop Order" to prevent the upcoming Florence County trial from proceeding. Petitioner argued that the IADA had been violated because the Virginia court had "block[ed]" Petitioner's return to the Missouri

---

[8] See Petitioner's Objection Toward This Court's Order Dated December 20, 2004 [11-1] at p.3.

[9] See Respondent's Response [12-1] at p. 1.

[10] See Respondent's Response [12-1] at pp. 2-3.

Department of Corrections and had permitted Petitioner to be extradited to South Carolina. Petitioner alleged that he should have first been sent to Missouri, and then to South Carolina. Thus, Petitioner contended that he was not properly in the custody of Florence County and that the Circuit Court did not have jurisdiction to try him. [15-1] In response, the Respondent filed Motion to Dismiss the request for a stop order and a supporting Memorandum in which the Respondent argued that the IADA did not apply to the present case for two reasons: First, the IADA did not apply to Petitioner because he is pre-trial detainee; and second, Petitioner's Missouri parole violation was not a matter which may serve as the basis for a detainer for IADA purposes. [16-1; 17-1] In addition to the Motion to Dismiss, the Respondent simultaneously filed a Motion for Summary Judgment and a supporting Memorandum which raised similar issues. [18-1; 19-1]

On March 3, 2005, the undersigned issued an Order pursuant to Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975), notifying Petitioner of the dismissal procedure and the possible consequences if he failed to adequately respond to the Motion to Dismiss and the Motion for Summary Judgment within thirty-four (34) days. [20-1] On March 7, 2005, the Petitioner responded by filing a Motion to Strike the Respondent's Motion for Summary Judgment and Supporting Memorandum from the docket on the grounds of redundancy. [21-1] The Petitioner then filed a Reply to the Motion to Dismiss Petitioner's Request for a Stop-Order [22-1], arguing that Petitioner was wrongfully denied IADA protections because (1) the Virginia court blocked Petitioner's return to the Missouri court; and (2) the Respondent demanded his presence in South Carolina. Next, on March 14, 2005, the Petitioner filed a Brief in Opposition to Respondent's Motion for Summary Judgment [23-1], which Petitioner followed with a Motion for Summary

Judgment [24-1] and a supporting Affidavit. [25-1]

## V. PETITIONER'S ARGUMENT FOR HABEAS RELIEF

Petitioner's Petition for a Writ of Habeas Corpus asserts the following grounds for relief:

A. The Petitioner was denied equal protection under the law in [sic] which denied him due process rights and protections of the law.

B. The Petitioner was denied the protections and rights as set -forth under the I.A.D.; the right of [sic] an orderly, fast and speedy disposition of a indictment, information or complaint, lodged against him from another state.

C. The interstate agreement act on detainers (18 U.S.C.A. Appx.) is made up of a number of articles to provide and [sic] efficient and uniform method for dealing with detainers involving jurisdictions of states.

D. When the Virginia Court acting in response to South Carolina needs, denied the Petitioner each of the rights afforded under Article III, IV and V. of the I.A.D.

E. In addition, the Petitioner was denied effective counsel that, in that [sic] he failed to take necessary legal steps to protect and guarantee the Petitioner's rights.

F. The counsel knew and failed to act to protect the rights of the Petitioner.

G. South Carolina's prosecutors knew or should have known they were violating the Petitioner's I.A.D. rights to a speedy trial.

G:A. If they were in such a hurry to take the Petitioner/Defendant to trial, why haven't they submitted a request for an indictment after 10 months since the Petitioner's preliminary.

G:B. Under article IV(c) of the I.A.D. they would of had [sic] only 120 days from the time the Petitioner was brought here.[11]



## VI. RESPONDENT'S MOTIONS TO DISMISS PURSUANT TO RULES 12(b)(1) AND 12(b)(6)

The Respondent filed a motion to dismiss the Petitioner's Request for Stop Order, although Respondent does not specify under which subpart of Rule 12 this motion was made. Under Rule 12(b)(1), it is well-settled that "[t]he plaintiff has the burden of proving that subject matter jurisdiction exists." Richmond, Fredericksburg & Potomac R. Co. v. United States, 945 F.2d 765, 768 (4th Cir.1991); see also Lujan v. Defenders of Wildlife, 504 U.S. 555, 560-61

---

[11] Petition [1-1] at 5-7.

(1992) (the party invoking federal jurisdiction bears the burden of proof). "When a defendant challenges subject matter jurisdiction pursuant to Rule 12(b)(1), 'the district court is to regard the pleadings as mere evidence on the issue, and may consider evidence outside the pleadings without converting the proceeding to one for summary judgment.'" Evans v. B.F. Perkins Co., 166 F.3d 642, 647 (4th Cir. 1999), *quoting* Richmond, Fredericksburg & Potomac R. Co. v. United States, 945 F.2d at 768. The district court should grant the Rule 12(b)(1) motion to dismiss "only if the material jurisdictional facts are not in dispute and the moving party is entitled to prevail as a matter of law." Evans v. B.F. Perkins Co., 166 F.3d at 647, *quoting* Richmond, Fredericksburg & Potomac R. Co. v. United States, 945 F.2d at 768.



If this court considers Respondent's Motion as one made pursuant to Rule 12(b)(6), the action may be dismissed if the Petitioner has "fail[ed] to state a claim upon which relief can be granted." When reviewing a Rule 12(b)(6) motion, the factual allegations of the complaint are taken as true. Johnson v. Mueller, 415 F.2d 354, 355 (4th Cir. 1969). A motion to dismiss for failure to state a claim upon which relief can be granted is only appropriate where it appears "beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Conley v. Gibson, 355 U.S. 41, 45-46 (1957). A complaint should not be dismissed for insufficiency unless it appears to a certainty that a plaintiff is entitled to no relief under any set of facts that could be proved in support of the claim. 2A James Wm. Moore *et al*, MOORE'S FEDERAL PRACTICE, ¶ 12.08 at 2271-2274.

## VII. SUMMARY JUDGMENT STANDARD

The Respondent's Motion for Summary Judgment is governed by the holding in Celotex Corporation v. Catrett, 477 U.S. 317, 323 (1986):

> [T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation there can be no "genuine issue as to any material fact," since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial.

It is important to add that unsupported speculation by a non-moving party is insufficient to defeat a summary judgment motion. Felty v. Graves-Humphreys Co., 818 F.2d 1126 (4th Cir. 1987). Similarly, genuine disputes of material facts are not demonstrated by the bald statements of a non-moving party in affidavits or depositions. Stone v. University of Md. Medical Sys. Corp., 855 F.2d 167 (4th Cir. 1988).



In deciding whether to grant a motion for summary judgment, all justifiable inferences must be drawn in favor of the non-moving party. Miltier v. Beorn, 896 F.2d 848, 852 (4th Cir. 1990); *citing* Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986). In addition, "once a plaintiff 'has named a witness to support [his] claim, summary judgment should not be granted without . . . somehow showing that the named witness' possible testimony raises no genuine issue of material fact.'" Miltier, 896 F.2d at 852, *quoting* Celotex v. Catrett, 477 U.S. 317, 328 (1986) (White J., concurring). Pursuant to Fed.R.Civ.P. 56(c), summary judgment is proper if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." For the reasons discussed below, the Respondent is entitled to summary judgment as a matter of law.

## VIII. ANALYSIS

### A. Introduction

As mentioned above, the Respondent simultaneously filed a Motion to Dismiss (which directly addressed the Stop Order) and a Motion for Summary Judgment. [16-1; 18-1] For the reasons discussed below, these motions should be granted, and the Petitioner's Motion to Stay [15-1], Petitioner's Motion to Strike [21-1], and Petitioner's Motion for Summary Judgment [24-1] should be denied.

### B. The IADA

As the majority of Petitioner's claims are based upon alleged violations of the IADA, the undersigned will first address the applicability of this statute to the case at bar. The IADA is an agreement entered into by forty-eight states, the District of Columbia, and the federal government to establish procedures for resolution of one jurisdiction's outstanding criminal charges against another jurisdiction's prisoner. See New York v. Hill, 528 U.S. 110, 111 (2000). The IADA  "enables a participating state to gain custody of a prisoner incarcerated in another jurisdiction, in order to try him on criminal charges." Reed v. Farley, 512 U.S. 339, 341 (1994). "A State seeking to bring charges against a prisoner in another State's custody begins the process by filing a detainer, which is a request by the State's criminal justice agency that the institution in which the prisoner is housed hold the prisoner for the agency or notify the agency when release is imminent." Hill, 528 U.S. at 112.

South Carolina's IADA is set forth in S.C. Code Ann. § 17-11-10. Significantly, however, while the IADA is a state law, "it is a law of the United States as well." Reed v. Farley, 512 U.S. at 339, 347 (1994). Insofar as it is a congressionally sanctioned compact within the Compact

Clause of the United States Constitution, U.S. Const. art. I, § 10, cl.3, the IADA is a federal law subject to federal construction. See Carchman v. Nash, 473 U.S. 716, 719 (1985). Federal habeas review of alleged IADA violations is limited, however, to errors constituting a "fundamental defect" resulting in a "complete miscarriage of justice" or "an omission inconsistent with rudimentary demands of fair procedure." Reed, 512 U.S. at 348, quoting Hill v. United States, 368 U.S. 424, 428 (1962); see also Metheny v. Hamby, 835 F.2d 672, 674 (6th Cir.1987) (holding that alleged violation of the IADA's "trial-before-return" provision was not cognizable on federal habeas review, absent exceptional circumstances not present in the case.).

### C. Whether the IADA Applies to Petitioner, as a Pre-Trial Detainee

It is undisputed that the Petitioner is a pre-trial detainee. As the Respondent correctly argues, the IADA only applies to sentenced prisoners, and does not apply to pre-trial detainees such as the Petitioner. See, e.g., United States v. Woolfolk, 399 F.3d 590, 599 (4th Cir. 2005)[12] (explaining that the IADA gives a sentenced prisoner subject to a detainer the right to demand a trial within 180 days on the charges underlying the detainer) (Michael, J., concurring in judgment) (emphasis supplied by the undersigned); see also United States v. Currier, 836 F.2d 11, 16 (1st Cir.1987) (the IADA applies only to sentenced prisoners); United States v. Roberts, 548 F.2d 665, 669-71 (6th Cir.1977) (holding that the IADA does not apply to persons in custody awaiting trial inasmuch as a pretrial detainee has not begun his "term of imprisonment" within the meaning of that statute); see also United States v. Glasgow, 790 F.2d 446, 449 (6th Cir.1985), *cert. denied,* 475 U.S. 1124 (1986) (holding that the IADA did not apply to a defendant in custody at a county

---

[12] Judge Williams wrote the majority opinion, in which Judge Floyd, United States District Judge for the District of South Carolina, concurred.

Page 11 of 15

jail awaiting trial on state charges); United States v. Roberts, 548 F.2d 665, 671 (6th Cir.), *cert. denied*, 431 U.S. 931 (1977) ("the Interstate Agreement on Detainers does not apply to a person who is imprisoned awaiting disposition of pending charges and who has not been sentenced to a term of imprisonment").

Because Petitioner is a pre-trial detainee awaiting trial, the IADA does not apply to him. Therefore, his reliance upon this statute will afford him no relief.

### D. Whether the IADA Applies to Petitioner's Missouri Parole Violation

Petitioner's Request for Stop Order contends that he should have been transferred from Chesterfield County, Virginia to Missouri in order to address his Missouri parole violation matter, instead of being transferred to Florence County Detention Center. Again, Petitioner's argument fails, because the Supreme Court has held that "a detainer based on a probation-violation charge is not a detainer based on 'any untried indictment, information or complaint,' within the meaning of Art. III" of the IADA. Carchman v. Nash, 473 U.S. 716, 726 (1985); *see* 18 U.S.C. app. § 2, art. III. Thus, the IADA does not apply to Petitioner's parole matter.

In conclusion, Petitioner's reliance upon the IADA is misplaced, as that statute does not afford him any relief under the facts of this case. Furthermore, Petitioner is not entitled to habeas relief under Section 2241 as he has failed to allege any "special circumstances" that would entitle him to federal habeas relief. See, e.g., Carden v. Montana, 626 F.2d 82, 83-85 (9th Cir.1980) (explaining that for reasons of comity, a pretrial detainee must show special circumstances, in addition to the merits of a speedy trial claim, warranting federal intervention in state criminal proceedings). Thus, Petitioner's Petition should be dismissed.

## RECOMMENDATION

Based upon the foregoing, **the Respondent's Motion to Dismiss [16-1] and Motion for Summary Judgment [18-1] should be granted, and the Petitioner's Motion to Stay [15-1], Petitioner's Motion to Strike [21-1], and Petitioner's Motion for Summary Judgment [24-1]** should be denied.

*/s/ George C. Kosko*
George C. Kosko
United States Magistrate Judge

June 27, 2005
Charleston, South Carolina

## Notice of Right to File Objections to Magistrate Judge's "Report and Recommendation" & The Serious Consequences of a Failure to Do So

The parties are hereby notified that any objections to the attached Report and Recommendation (or Order and Recommendation) must be filed within **ten (10) days** of its service. 28 U.S.C. § 636 and Fed. R. Civ. P. 72(b). The time calculation of this ten-day period excludes weekends and holidays and provides for an additional three days for filing by mail. Fed. R. Civ. P. 6. Based thereon, this Report and Recommendation, any objections thereto, and the case file will be **delivered to a United States District Judge** fourteen (14) days after this Report and Recommendation is filed. Advance Coating Technology, Inc. v. LEP Chemical, Ltd., 142 F.R.D. 91, 94 & n. 3, (S.D.N.Y. 1992). A magistrate judge makes only a recommendation, and the authority to make a final determination in this case rests with the United States District Judge. *See* Mathews v. Weber, 423 U.S. 261, 270-271 (1976); and Estrada v. Witkowski, 816 F. Supp. 408, 410 (D.S.C. 1993).

During the period for filing objections, <u>but not thereafter</u>, a party must file with the Clerk of Court specific, written objections to the Report and Recommendation, if he or she wishes the United States District Judge to consider any objections. **Any written objections must *specifically identify* the portions of the Report and Recommendation to which objections are made *and* the basis for such objections.** *See* Keeler v. Pea, 782 F. Supp. 42, 43-44 (D.S.C. 1992); and Oliverson v. West Valley City, 875 F. Supp. 1465, 1467 (D. Utah 1995). Failure to file specific, written objections shall constitute a waiver of a party's right to further judicial review, including appellate review, if the recommendation is accepted by the United States District Judge. *See* United States v. Schronce, 727 F.2d 91, 94 & n. 4 (4th Cir.) 1984, *cert. denied*, Schronce v. United States, 467 U.S. 1208 (1984); and Wright v. Collins, 766 F.2d 841, 845-847 & nn. 1-3 (4th Cir. 1985). Moreover, if a party files specific objections to a portion of a magistrate judge's Report and Recommendation, but does not file specific objections to other portions of the Report and Recommendation, that party waives appellate review of the portions of the magistrate judge's Report and Recommendation to which he or she did not object. In other words, a party's failure to object to one issue in a magistrate judge's Report and Recommendation precludes that party from subsequently raising that issue on appeal, even if objections are filed on

other issues. Howard v. Secretary of HHS, 932 F.2d 505, 508-509 (6th Cir. 1991). *See also* Praylow v. Martin, 761 F.2d 179, 180 n. 1 (4th Cir. 1985)(party precluded from raising on appeal factual issue to which it did not object in the district court), *cert. denied*, 474 U.S. 1009 (1985). In Howard, supra, the Court stated that general, non-specific objections are *not* sufficient:

> **A general objection to the entirety of the [magistrate judge's] report has the same effects as would a failure to object. The district court's attention is not focused on any specific issues for review, thereby making the initial reference to the [magistrate judge] useless. * * * This duplication of time and effort wastes judicial resources rather than saving them, and runs contrary to the purposes of the Magistrates Act. * * * We would hardly countenance an appellant's brief simply objecting to the district court's determination without explaining the source of the error.**

*Accord* Lockert v. Faulkner, 843 F.2d 1015, 1017-1019 (7th Cir. 1988), where the Court held that the appellant, who proceeded *pro se* in the district court, was barred from raising issues on appeal that he did not specifically raise in his objections to the district court:

> **Just as a complaint stating only 'I complain' states no claim, an objection stating only 'I object' preserves no issue for review. * * * A district judge should not have to guess what arguments an objecting party depends on when reviewing a [magistrate judge's] report.**

*See also* Branch v. Martin, 886 F.2d 1043, 1046 (8th Cir. 1989)("no de novo review if objections are untimely or general"), which involved a *pro se* litigant; and Goney v. Clark, 749 F.2d 5, 7 n. 1 (3rd Cir. 1984)("plaintiff's objections lacked the specificity to trigger *de novo* review").

**This notice, hereby, apprises the parties of the consequences of a failure to file specific, written objections.** *See* Wright v. Collins, supra; and Small v. Secretary of HHS, 892 F.2d 15, 16 (2nd Cir. 1989). Filing by mail pursuant to Fed. R. Civ. P. 5 may be accomplished by mailing objections addressed as follows:

**Larry W. Propes, Clerk**
**United States District Court**
**Post Office Box 835**
**Charleston, South Carolina 29402**
